# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TERRISH LANDRUM, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>TROY STEELE, )<br>)<br>Respondent. ) | Case No. 4:13-CV-179 ERW-NAB |

## REPORT AND RECOMMENDATION

This action is before the court upon Petitioner Terrish J. Landrum's ("Landrum") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. [Doc. 1.] Respondent Troy Steele ("Respondent") filed a response. [Doc. 11.] This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). [Doc. 5.] For the reasons set forth below, the undersigned recommends that the Petition be denied.

**I. BACKGROUND**

Landrum was charged in an information with first degree murder and armed criminal action. (Resp't Ex. 1 at 1.) On March 10, 2008, Landrum appeared with counsel and informed the court that he was waiving his right to trial by jury and requested a bench trial. (Resp't Ex. 1 at 4-14.) The trial judge inquired whether Landrum understood his constitutional right to a trial by jury. *Id.* Landrum affirmed, under oath, that he had a right to a trial by jury, he was presumed innocent and that the state must prove him guilty beyond a reasonable doubt. (Resp't Ex. 1 at 6.) Landrum also affirmed that he understood that a jury verdict would have to be unanimous and if he waived that right, it would be the court's decision alone to determine his guilt or innocence. (Resp't Ex. 1 at 6, 8-9.) Landrum informed the court that he was making the

decision of his own free will, no one forced him to waive his right to a jury trial, and it was his idea to request a bench trial. (Resp't Ex. 1 at 7-11.) Landrum responded affirmatively that he understood the written waiver to a jury trial and he signed it of his own free will. (Resp't Ex. 1 at 10-11.) The trial judge found that Landrum's waiver of jury trial was made voluntarily and freely. (Resp't Ex. 1 at 11-12.)

The evidence presented at trial, viewed in the light most favorable to the verdict, established the following: The victim resided at 4408 Cote Brilliante in the Ville neighborhood, on the same floor as Meschella Blanks Russell ("Russell"), Landrum's former girlfriend. (Resp't Ex. 1 at 93-94.) During the late afternoon on September 29, 2005, the victim initiated an argument with Russell regarding the building's telephone. (Resp't Ex. 1 at 95-97.) During the argument, Russell received a phone call from Landrum, who overheard the victim in the background and became angered. (Resp't Ex. 1 at 100.) Landrum asked to come over to Russell's room and Russell consented. (Resp't Ex. 1 at 100-101.) Upon arriving, Landrum and Russell went into Russell's bedroom. (Resp't Ex. 1 at 102-103, 131.) The victim continued "cursing [and] walking back and forth down the hallway." *Id.* at 103. Landrum became "offended," and began punching the victim in the hallway before Russell intervened on the victim's behalf. *Id.* at 103, 131. Shortly thereafter, Landrum went into the victim's room and proceeded to beat her a second time until Russell again intervened. *Id.* at 104. Landrum, described as being in a "hyped" state, left with Russell and returned to her bedroom, where Russell fell asleep. *Id.* at 106.

Later, Russell awoke and noticed that Landrum had returned to the victim's bedroom. (Resp't Ex. 1 at 106.) Landrum "had a blanket over [the victim's] body…wrapped up like a mummy," and was beating her with a crowbar, then a hammer. (Resp't Ex. 1 at 107-110.)

Russell returned to her room when Landrum began to stab the victim with a knife. *Id.* at 107-108. Russell heard Landrum dragging the victim's body down the stairs.[1] *Id.* at 110. Landrum disposed of the hammer and the knife in a trashcan. *Id.* at 34. The victim's body was discovered the next day. *Id.* at 148.

Landrum returned home, disposed of his shirt in the trash can, and confessed to Ms. Elaine Arredon, his landlord, that he "killed a lady." *Id.* at 158-159. Landrum's DNA was found in the victim's bedroom on a discarded cigarette butt. (Resp't Ex. 1 at 151-152, 200.) Both Landrum and the victim's DNA were additionally found on the hammer, knife, and shirt, as well as Landrum's jeans. (Resp't Ex. 1 at 34, 200-206.) Landrum made a videotaped confession to the police. (Resp't Ex. 1 at 47-51, 293.)

On April 4, 2008, Landrum was sentenced to two concurrent life terms in prison without the possibility of parole for murder in the first degree and armed criminal action. (Resp't Ex. 1 at 379-380.) Landrum appealed his conviction before the Missouri Court of Appeals, which affirmed the trial court's conviction on February 17, 2009. (Resp't Ex. 3.) On June 26, 2009, Landrum filed a *pro se* Rule 29.15 Motion to Vacate, Set Aside or Correct Judgment or Sentence. (Resp't Ex. 5 at 4-9). After counsel was appointed, Landrum filed an Amended Motion, which was denied by the trial court on October 21, 2011. (Resp't Ex. 4 at 38-54.) The Missouri Court of Appeals affirmed the trial court's decision on August 28, 2012. (Resp't Ex. 6.) Landrum filed his Petition for Writ of Habeas Corpus on January 25, 2013. [Doc. 1].

In his Petition, Landrum asserts that the trial court erred in denying his motion for acquittal and that he received ineffective assistance of counsel. Respondent contends that Landrum's claims either lack merit or are not cognizable in a federal habeas proceeding.

---

[1] Landrum testified that he did not kill the victim. Landrum testified that a man in a ski mask with a gun threatened his life and forced him to move a dead body to the lot next door. (Resp't Ex. 1 at 281-285.)

## II. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings." 28 U.S.C. § 2254(d)(1)-(d)(2) (1996). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), "the phrase 'clearly established Federal law,'. . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (noting that the statutory phrase "clearly established Federal law" refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. *Evenstad v. Carlson,* 470 F.3d 777, 783 (8th Cir. 2000) (citing *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006)).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme

4

Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. at 405–406). "A state court decision [is] an 'unreasonable application of' clearly established [Supreme Court] precedent if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Id*. (citing *Williams*, 529 U.S. at 407–408). Furthermore, as the Supreme Court has clarified: "[E]ven if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Evenstad*, 470 F.3d at 782 (citing *Penry*, 532 U.S. at 792). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.* (internal citations omitted).

### III. DISCUSSION

#### A. Ground One- Trial Court Error in Denial of Motion for Acquittal

First, Landrum alleges violation of his right to due process when the trial court overruled his motion for acquittal following the close of evidence. He contends that the court had insufficient evidence to prove that he knowingly caused the victim's death following deliberation. He also asserts that Russell's "destructive testimony[2]" cannot support his conviction.

The Due Process Clause of the Fifth Amendment provides that no one can be deprived of liberty without due process of law and the Sixth Amendment guarantees that "in all criminal

---

[2] Destructive testimony is "inconsistent and contradicting [witness] statements at trial [that] are so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of all probative force." *State v. Eyman*, 828 S.W.2d 883, 887 (Mo. App. 1992).

5

prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. V, VI. "[These] provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *U.S. v. Gaudin*, 515 U.S. 506, 510 (1995).

"In the interests of finality and federalism, federal habeas courts are constrained by [AEDPA] to exercise only a limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). State law defines the elements of state law crimes. *Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995). "A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by federal courts, as is any judgment affirming a criminal conviction." *Jackson*, 443 U.S. at 323.

A state prisoner is entitled to habeas corpus relief if the court finds that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The court must presume that the trier of fact resolved all conflicting inferences in favor of the state and the court must defer to that resolution. *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003). In reviewing the sufficiency of the evidence, the court is "not permitted to conduct its own inquiry into witness credibility; that is a task reserved to the [fact finder]." *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000).

The trial court denied Landrum's motions for judgment of acquittal at the end of the state's case and the close of all the evidence. (Resp't Ex. 1 at 250-251, 329-330.) The Missouri Court of Appeals determined that there was sufficient evidence to support Landrum's convictions of first degree murder and armed criminal action, including Landrum's videotaped confession, testimony of Russell and Arredon, and the DNA evidence. (Resp't Ex. 2.) The

appeals court also found that Russell's testimony was not contradictory or inconsistent. (Resp't Ex. 2 at 6.)

Based on a review of the entire record, the undersigned finds that the state appellate court did not commit error when determining that there was sufficient evidence to support Landrum's convictions. There was overwhelming evidence of Landrum's guilt. Landrum testified that he was at the location of the murder. (Resp't Ex. 1 at 276-277, 296-297.) Russell testified that she witnessed Landrum repeatedly beating and stabbing the victim. (Resp't Ex. 1 at 103-110.) Landrum testified that he disposed of the victim's body. (Resp't Ex. 1 at 281-285.) Arredon testified that Landrum confessed to killing a woman. (Resp't Ex. 1 at 157-158.) Landrum's DNA was found in the victim's bedroom on a discarded cigarette butt. (Resp't Ex. 1 at 151-152, 200.) Both Landrum and the victim's DNA were also found on the hammer, knife, and shirt, as well as Landrum's jeans. (Resp't Ex. 1 at 34, 200-206.) Landrum made a videotaped confession to the police. (Resp't Ex. 1 at 47-51, 293.) Even if Russell's testimony was omitted, there is still substantial evidence supporting the state appellate court's determination that Landrum committed the offenses of first degree murder and armed criminal action.

The state appellate court's findings and conclusions were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The state court's findings are consistent with federal constitutional standards and the undersigned recommends that this claim be denied.

Landrum also asserts that the motion court erred in denying his motion for acquittal without a hearing because he demonstrated that his trial counsel was ineffective in failing to

explain his right to a jury trial and in failing to investigate his mental capacity. Notwithstanding the merits of Landrum's ineffective assistance of counsel claims which are discussed in greater detail in Ground 2, *infra*, this claim is barred from federal habeas review. "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction hearing." *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990). "Habeas relief is available to a state prisoner only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Therefore, Landrum's "claim that the post-conviction motion court erred in denying his motion without holding an evidentiary hearing is collateral to his conviction and detention, and not cognizable in a federal habeas petition." *Like v. Bowersox*, No. 4:10-CV-1566 JCH, 2011 WL 4014398 at *1 (E.D. Mo. Sept. 9, 2011). The undersigned recommends that this claim be denied.

### B. Ground 2- Ineffective Assistance of Counsel

Next, Landrum asserts that he received ineffective assistance of counsel. First, he states his counsel "didn't fully explain the impact of having a bench trial." Second, Landrum asserts that his counsel did not properly investigate his mental capacity, therefore inducing his unknowing, unintelligent, and involuntary waiver of a jury trial. Third, Landrum asserts that his counsel failed to question, who he believes would have supported his innocence and witness Johnny Moore was not questioned properly.

#### 1. Ineffective Assistance of Counsel Standard of Review

To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

8

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to the law." *Id.* at 694.

It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. It is unnecessary, therefore, to prove that counsel's performance fell below an objective standard of reasonableness before determining the presence or absence of resulting prejudice.

## 2. Waiver of Jury Trial

Landrum asserts that his waiver of a jury trial was unknowing, unintelligent, and involuntary because his counsel "didn't fully explain the impact of having a bench trial." In his state appellate brief, Landrum asserted that "but for trial counsel's failure to… inform [him] that the decision was his alone, [he] would not have waived, and would have exercised his constitutional right to a jury trial." (Resp't Ex. 4 at 44.) Further, Landrum asserted that "the outcome of the trial would have been different and it is reasonably probable that [a] jury [of his peers] would have acquitted [him] or found him guilty of a less[er] offense." (Resp't Ex. 4 at 41.) Respondent contends that this claim lacks merit and should be denied.

During the pre-trial proceeding, Landrum testified under oath that he understood both that he had a right to a trial by jury and that if he waived that right, the verdict would be left to the judge alone. (Resp't Ex. 1 at 5-6.) Landrum further testified that he was making the decision to forgo a jury trial of his own free will, that no one was forcing him to do so, that it was his idea, and that he discussed this desire with his counsel. *Id.* at 7. Following his sentencing, Landrum testified that he "advised [his counsel] that [he] wanted to waive trial by jury," and that his counsel performed "everything [he] asked." *Id.* at 387-91.

The Missouri Court of Appeals rejected Landrum's claims that his waiver of a jury trial was due to ineffective assistance of counsel, because the record refutes his argument. (Resp't Ex. 6 at 9.) The court noted that Landrum "clearly conveyed to the trial court that he understood his right to a jury trial and, with that knowledge, unmistakably indicated his desire to waive that right." *Id.*

Based on the record and the state court's final decision in this matter, the undersigned finds that Landrum has failed to satisfy either prong of the *Strickland* test. Landrum cannot

show that his trial counsel's performance fell below an objective standard of reasonableness. The evidence presented at trial against Landrum was staggering, including DNA evidence and multiple confessions by Landrum. Based on the severity of the offenses and the overwhelming weight of the evidence in the State's favor, it was not unreasonable for Landrum's counsel to advise that a jury, swayed by pathos, might be inclined to impose a harsher sentence than a judge in a bench trial. Therefore, it may be considered "sound trial strategy" for counsel to advise Landrum against proceeding in a jury trial. *See Strickland*, 466 U.S. at 689. Consequently, Landrum cannot show that his trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688.

Furthermore, Landrum cannot establish prejudice, because it is unlikely that a jury of his peers would have overturned his conviction. The appeals court considered Landrum's ineffective assistance of counsel claim and specifically stated that "the evidence proffered against [Landrum] at trial was substantial and convincing." (Resp't Ex. 6 at 11.) Based on the totality of the circumstances and the record, the undersigned finds that Landrum failed to establish that the result of the proceeding would have been different but for his counsel's actions. *See Strickland*, 466 U.S. at 694.

In sum, Landrum cannot demonstrate ineffective assistance of counsel, because he cannot show either his trial counsel's performance fell below an objective standard of reasonableness with regard to waiving his right to a jury trial or that his defense was prejudiced by counsel's performance. The state court's findings and conclusions regarding ineffectiveness of counsel involving Landrum's waiver of his right to jury trial were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the undersigned recommends that this claim be denied.

### 3. Investigation of Mental Competency

Next, Landrum asserts that he received ineffective assistance of counsel because his attorney failed to investigate his major depression with psychosis and paranoia and low intellectual ability, which resulted in his unknowing, unintelligent, and involuntary waiver of jury trial. Respondent contends that this claim lacks merit and should be denied.

The Due Process Clause "prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v.* California, 505 U.S. 437, 439 (1992). Absent some contrary indication, both state and federal trial judges may presume a defendant to be competent. *Branscomb v. Norris*, 47 F.3d 258, 261 (8th Cir.1995). A defendant is considered competent if he has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Lyons v. Luebbers*, 403 F.3d 585, 592-93 (8th Cir. 2005). "A trial court must hold a competency hearing, on motion, or sua sponte, whenever evidence raises doubt about the accused's mental competency to stand trial." *Wise v. Bowersox*, 136 F.3d 1197, 1204 (8th Cir. 1998). When evaluating a defendant's competence, trial courts must consider (1) evidence of irrational behavior by the accused, (2) the accused's demeanor, and (3) any prior medical opinion as to the mental competency of the accused to stand trial." *Id.* at 593. Because competence to stand trial is a factual issue, the state court's finding of competence is generally presumed to be correct. *Id.* (citing *Reynolds v. Norris*, 86 F.3d 796, 800 (8th Cir. 1996)).

The Missouri Court of Appeals found that there was no factual basis in the record sufficient to have required Landrum's counsel to investigate his mental condition. (Resp't Ex. 6

at 10.) The undersigned agrees. There is no evidence in the record that there was any conduct on the part of Landrum that would require his counsel to investigate his mental condition. "[The] presence of mental illness does not equate with competency to stand trial." *U.S. v. Cook*, 356 F.3d 913, 918 (8th Cir. 2004); *see also Fenton v. Dormire*, No. 4:07-CV-1595 DJS, 2010 WL 3733923 at *7 (E.D. Mo. Sept. 20, 2010) (§ 2254 case). Therefore, the undersigned finds that Landrum cannot show that his counsel's failure to investigate his mental condition fell below an objective standard of reasonableness. Thus, Landrum cannot show that he received ineffective assistance of counsel.

The state appellate court's findings and conclusions regarding counsel's failure to investigate Landrum's mental condition were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the undersigned recommends that this claim be denied.

### 4. Witnesses

Finally, Landrum asserts two claims regarding witnesses. First, Landrum states that his counsel did not "try to question the witness that movant requested that would have shed light" on his innocence in this case. Landrum does not identify this witness. Landrum also contends that the prosecution "did not completely ask [trial witness Johnny Moore] what really happen[ed]." Respondent contends the claim about the unidentified witness lacks merit and should be denied. Respondent did not address Landrum's claim regarding Johnny Moore.

Notwithstanding the merits of these claims, the undersigned finds that Landrum is procedurally barred from raising them as they have not been previously considered by the state

courts. A state prisoner's petition for federal habeas corpus review under 28 U.SC. § 2254 may only be granted if the prisoner has exhausted his state law remedies. 28 U.S.C. § 2254(b)(1)(A). "Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court." *Weeks v. Bowersox*, 119 F.3d 1342, 1349-50 (8th Cir. 1997). "In Missouri, a claim must be presented at each step of the judicial process to avoid default." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Jolly v. Gammon*, 28 F.3d 51 (8th Cir. 1994).

Landrum originally included an ineffective assistance of counsel claim regarding witnesses in a Motion to Vacate, Set Aside or Correct the Judgment or Sentence before the trial court. (Resp't Ex. 4 at 4.) The claims were removed from the Amended Motion prior to the trial court's review. (Resp't Ex. 4 at 38-50.) These claims were not adjudicated in the state courts. Therefore, Landrum has failed to exhaust the remedies available in the state court.

A petitioner may overcome the procedural bar by demonstrating a legally sufficient cause for the default and actual prejudice resulting from it, or by demonstrating that failure to review the petition would result in a fundamental miscarriage of justice. *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012); *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Under the cause and prejudice standard, the petitioner establishes cause by showing that something external and not fairly attributed to him caused the procedural default. *Ivy v. Caspari*, 173 F.3d 1136, 1140 (8th Cir. 1999). A petitioner establishes prejudice by showing that the prejudice worked to his actual and substantial disadvantage. *Id.* at 1141.

Landrum's claim does not meet this narrow exception. Landrum cannot demonstrate cause for the procedural default, as there is nothing in the record to indicate an "external impediment" that obstructed his raising the claim in state court. *See Murray*, 477 U.S. at 492.

After a brief examination of the claim's merits, it is the undersigned's conclusion that Landrum additionally failed to demonstrate actual prejudice or a fundamental miscarriage of justice. There is overwhelming evidence of Landrum's guilt and it is unlikely the unidentified witness's testimony regarding his innocence would have changed the outcome of the trial. Further, Johnny Moore testified at the trial and offered little evidence other than he saw the victim bleeding from the head and heard her arguing with Russell, the night before the victim's body was discovered. (Resp't Ex. 1 at 254-272.) Therefore, it is the undersigned's conclusion that Landrum defaulted on these ineffective assistance of counsel claims and the claims should be denied. 28 U.S.C. § 2254(b)(1)(A).

## IV.  CONCLUSION

For the reasons set forth above, the undersigned recommends that Landrum's claims for relief be denied. Because Landrum has made no showing of a denial of a constitutional right, the undersigned does not recommend that a certificate of appealability be issued in this matter. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED**. [Doc. 1.]

**IT IS FURTHER RECOMMENDED** that, for the reasons stated herein, any motion by Landrum for a Certificate of Appealability be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 22nd day of July, 2014.

/s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE